## FARMER *v.* BANK.

(*Nashville.* December 18, 1897.)

1. BANKS AND BANKING. *Liability for proceeds of check collected on forged indorsement.*

   A bank that has received and collected a check upon a forged indorsement of the payee's name is liable to the payee for its proceeds, although the bank had paid over or fully accounted for same to the forger, without knowledge or suspicion of the forgery. (*Post, pp. 188–191.*)

   Cases cited and approved: Pickle *v.* Muse, 88 Tenn., 381; Chism *v.* Bank, 96 Tenn., 641; 1 Hill, 295; 35 N. J. L., 400; 19 Ohio St., 526; 6 Hum., 124; 1 Ex. Div., 368.

2. PRIVITY. *Not essential to maintenance of action, when.*

   Want of privity will not defeat an action by the payee of a check to recover its proceeds from a bank that has innocently received and collected it upon a forged indorsement. (*Post, pp. 191, 192.*)

   Cases cited and approved: Pickle *v.* Muse, 88 Tenn., 381; 1 Hill, 295; 35 N. J. L., 400.

---

FROM ROBERTSON.

---

Appeal in error from Circuit Court of Robertson County. A. H. MUNFORD, J.

E. A. HICKS and R. L. PECK for Farmer.

L. T. COBBS and A. E. GARNER for Bank.

BEARD, J.   This suit was brought to recover the
proceeds of a check of which plaintiff in error
claimed to be the owner, and which he alleged had
wrongfully gone into the possession of the defendant
in error, and been collected by it.   The evidence in
the case tends to show that Farmer delivered to one
Head a small lot of tobacco to be put in order for
market; that, when so prepared, Head sent it to
his merchants in Nashville, who, having sold it, re-
turned to him the net proceeds of the sale in their
check on the Fourth National Bank of Nashville,
payable, however, to the order of plaintiff in error;
that instead of delivering it to the payee, Head,
without his knowledge or consent, indorsed the payee's
name upon it, and delivered it to the defendant
bank, whose officers, supposing this indorsement to
be genuine, and without suspicion as to the title of
Head, placed it to his credit, and permitted him to
check it out; that it then forwarded the check to
its correspondent, who, in due time, presented it to
the drawee, and, receiving from it the amount
thereof, remitted it to the defendant bank.   Declin-
ing to pay to Farmer the sum so collected, this
suit was instituted.

In the course of his charge to the jury, the trial
Judge said: "If you find from the evidence that
'the draft in question was drawn by Dortch, Carsey
& Co. in favor of plaintiff on the Fourth National
Bank of Nashville, and that his name was indorsed
on the back of the draft, but that such indorsement

was a forgery, then the draft was not legally in-
dorsed, and should not have been paid; but if the
defendant simply received the draft from Riley Head
as a deposit, placing it to Head's credit, and after-
wards had it collected from. the Fourth National
Bank, and the defendant acted in good faith, not
knowing the indorsement of plaintiff's name was a
forgery, then the defendant would not be liable to
plaintiff for said draft, and you should find for the
defendant.''

While there is obscurity in the first clause of this
paragraph, the result, no doubt, of clerical omission
in the transcript, in the concluding part the jury
are very distinctly told that if they should find the
defendant bank simply took this check or draft as
bailee, for collection, in good faith, and without
knowledge of the forged indorsement of the payee's
name, then it would not be liable, though it had
received its proceeds and paid them over to Head.
There was error in giving this instruction, for which
the case must be reversed.

While the exact question here presented has not
been heretofore raised in this State, yet the ultimate
principle upon which it rests for determination has
been recognized and applied by this Court.    In
*Pickle* v. *Muse*, 88 Tenn., 381, the well-settled rule
was announced that ''a check drawn in favor of a
particular payee or ' order, is payable only to the
actual payee, or upon his genuine indorsement, and
if the bank mistake the identity of the payee, or

pay upon a forged indorsement, it is not a payment in pursuance of authority, and it will be responsible.'' To the same effect is *Chism, Churchill & Co.* v. *Bank*, 96 Tenn., 641. The logic of this holding, it would seem, must necessarily be that one coming into possession of such paper, either unindorsed or with a forged indorsement of the payee's name, could not successfully resist the title of the true owner, or, if it has been converted into money, a demand for its proceeds.

In such a case the rule of law is stated by Morse, in his work on Banks and Banking, Vol. I., Sec. 248: ''If a negotiable instrument, having a forged indorsement, come into the hands of a bank and is collected by it, the proceeds are held for the rightful owner of the paper, and may be recovered by him, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection.''

Cases involving facts similar to those upon which this controversy turns, have been considered by a number of Courts of the highest respectability, and the rule announced by Mr. Morse has been applied to them. In *Talbot* v. *Bank of Rochester*, 1 Hill, 295, a certificate of deposit belonging to Talbot was stolen, and by a forged indorsement came into the possession of the defendant bank, which subsequently collected it from the drawee, and at the suit of the owner, the receiving bank was held liable for the proceeds of the certificate, though it acted in the

utmost good faith, and without any suspicion of the fraud practiced upon the true owner. *Buckley* v. *Second National Bank*, 35 N. J. L., 400, was a case where a check with the name of the payee forged upon it, came to the possession of the defendant innocently, and was so collected by it; having done so, it was compelled to respond to the claim of the true owner, upon his discovery of the loss and fraud, though the bank had already accounted for the proceeds to the party from whom it had obtained possession. In the course of the opinion, the Court say: "It is clear, then, that nothing passed to the defendant by virtue of the forged indorsement. The plaintiff's right to the check remained precisely as it was before his name was forged. The check, therefore, when the defendant obtained the money upon it, was the property of the plaintiff, and in that case he may, as we have seen, recover the amount in this action, as money received by the defendant to his use."

In *Shaffer* v. *McKee*, 19 Ohio St., 526, a draft payable to plaintiff's order was stolen from the mail, and the thief having placed a forged indorsement upon it, sold it to McKee, who, in good faith collected from the drawee the money, and appropriated it to his own use, and, upon these facts, it was held the owner was entitled to recover. To the same effect are *Johnson* v. *First National Bank*, 6 Hun, 124, and *Babbitt* v. *Pinkett*, 1 Ex. Div., 368. But it is insisted this action cannot be maintained

for the want of privity between the parties. This objection was made in *Talbot* v. *Bank of Rochester*, *supra; Buckley* v. *Second National Bank*, *supra*, and *Pickle* v. *Muse*, *supra*, and in each of these it was held not to be well taken. Although not actually delivered to plaintiff, yet his ratification by a demand upon the defendant for its proceeds, by this suit, if not before, made the check the property of Farmer (*Pickle* v. *Muse*, *supra*), so that when, without any lawful right, the defendant converted it into money, it stood in the place of the original paper, and was equally the property of the plaintiff in error. In the one case no more than the other can the defendant in error resist the right of recovery of the true owner upon the ground of a want of privity; for the action against the wrongdoer does not rest upon privity, but upon the fact that he has intermeddled with property not his own, and, asserting a hostile claim, he has interfered with the lawful use and dominion of the owner of the property.

For the error of the Circuit Judge in the matter indicated, the judgment is reversed, and the case is remanded for a new trial.