[Civ. No. 5016. Second Appellate District, Division Two.—May 11, 1928.]

L. B. GEORGE, Appellant, v. SECURITY TRUST & SAVINGS BANK (a Corporation), Respondent.

L. B. George *in pro. per.*, and Edgar K. Brown for Appellant.

Jennings & Belcher for Respondent.

STEPHENS, J., *pro tem.*—A demurrer to the original complaint was sustained and plaintiff filed an amended complaint. To this pleading a demurrer was likewise interposed. It was sustained by the court without leave to amend, and judgment went for defendant. Plaintiff appeals from the judgment.

There is no contention that plaintiff desired further to amend, and the briefs respond to the one question only: Does the complaint state a cause of action? This is the sole question to be considered here.

The facts as alleged in the complaint are concisely put in appellant's opening brief as follows: "The complaint alleges that Lynch drew his check to the order of Vanderbilt and gave it to Allen, who had no authority to receive or endorse the same; that the drawee bank accepted and certified the check; that Allen thereupon forged the payee's name and passed the check to Cohen; that Cohen collected the amount thereof from the defendant bank; and defendant in turn collected the amount from the drawee bank; that the payee has demanded the amount from defendant, who refuses to pay." Plaintiff is the assignee of the payee.

It seem that the exact point here presented has never been preseited to the reviewing courts of this state, but it has been vc y thoroughly presented to the courts of last resort of sev ral sister states, and the great weight of au-

thority unquestionably is that the facts alleged in this case do state a cause of action.

The supreme court of Colorado had a case before it in all essentials the same as the instant one, and the opinion so well expresses the prevailing view that we shall quote therefrom extensively:

"In this case the payee in the checks seeks to recover from another bank who accepted and paid these checks upon forged endorsements, and thereafter collected the amounts upon the checks from the bank upon which they were drawn. In such case the rule in Tennessee, New Jersey, Ohio, New York and Indiana is that the payee can recover from a bank which accepted them from the forger and collected them from the drawee bank, as for moneys had and received, even though it has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery. *Farmer* v. *People's Bank,* 100 Tenn. 187 [47 S. W. 234]; *Knoxville Water Co.* v. *East Tennessee Nat. Bank,* 123 Tenn. 364 [131 S. W. 447]; *Buckley* v. *Second Nat. Bank,* 35 N. J. L. 400 [10 Am. Rep. 249]; *Shaffer* v. *McKee,* 19 Ohio St. 526; *Talbot* v. *Bank of Rochester,* 1 Hill (N. Y.), 295; *Johnson* v. *First Nat. Bank,* 6 Hun (N. Y.), 124; *Graves* v. *American Exch. Bank,* 17 N. Y. 205; *Indiana Nat. Bank* v. *Holtschaw,* 98 Ind. 85. This same principle is laid down in volume 1, 4th edition, of Morse on Banks & Banking, wherein, at page 483, the author states: 'If a negotiable instrument having a forged endorsement come to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection.' These cases are based upon the theory of ratification by the payee of the collection of the check from the drawee, and that the collecting bank can then be held as for moneys had and received, and that the payment by the drawee bank to the collecting bank with the forged endorsement thereon is evidence that the check was accepted and paid by the drawee bank, which acts the payee ratifies." (*United States Portland Cement Co.* v. *United States National Bank of Denver,* 61 Colo. 334 [L. R. A. 1917A, 145, 157 Pac. 202].)

The leading case taking the opposite view is *Tibby, etc.,* v. *Farmers etc. Bank,* 220 Pa. 1 [15 L. R. A. (N. S.) 519, 69 Atl. 280]. This case states the rule prevailing in some jurisdictions that the payee of a check cannot maintain an action against a drawee bank until the check has been accepted by it, because there is no privity of contract or other relation existing between the payee and the bank which establishes an obligation to pay or from which an assumption to pay arises. It then declares flatly that "the plaintiff's right of action against the defendant [paying] bank is not superior to its right of action against the drawee bank. The money paid the defendant on the several checks was the money of the drawee banks, in which neither the drawers of the checks nor the plaintiff had any interest, and, having been paid on forged indorsements, it may be recovered from the defendants by the paying banks. The defendant, therefore, has received no money for or on account of the plaintiff company, and for which, in good conscience, it should account to the plaintiff." The court, in this decision, did not adopt the theory of ratification of the check so clearly expounded in *United States Portland Cement Co.* v. *United States National Bank, supra.* A very useful note to the Tibby case may be found in 15 L. R. A. (N. S.) 519, closing with this statement: "It is apparent from this review of the reported cases that the holding of *Tibby Bros. Glass Co.* v. *Farmers & M. Bank* is contrary to the weight of authority." A comprehensive note following the Portland Cement Company case at page 148, L. R. A. 1917A, refers to the Tibby case and says: "But it is the only case in which this position is taken."

Respondent claims that the decisions cited by appellant were all prior to the adoption of the uniform negotiable instruments laws and comments upon the old case of *Talbot* v. *Bank of Rochester,* 1 Hill (N. Y.), 295, referred to and quoted from in several of the later decisions. He then proceeds to argue that the weight of authority, and particularly since the adoption of the uniform negotiable instruments laws is that the holder of a check cannot maintain an action against the drawee bank unless and until the check has been accepted by the drawee bank. For the sake of argument this may be conceded, but we do not appreciate the rele-

vancy of this statement to the instant set of facts, nor do we see any applied importance in the statement in the brief immediately following this argument: "and that the acts of an intermediary bank do not constitute an acceptance." We confess we do not see that any great importance should be given to the fact that the drawee bank certified the check. Appellant in his reply brief asserts that the Portland Cement Company case and the cases cited therein were decided since the adoption of the uniform negotable instrument laws in those jurisdictions. Whether this is so or not, we do not believe the doctrine in those cases is contrary to any section thereof. We think the better reasoning is with the theory of ratification as stated in the Portland Cement Company case, and the great weight of authority being that way, we adopt it in this case.

Respondent further contends that the matter of ratification should be alleged, but that would be alleging a conclusion. There are allegations in the complaint as to the facts, and whether or not there was a ratification is to be drawn from the proof adduced upon those allegations.

The judgment is reversed, with directions to the trial court to overrule the demurrer to the amended complaint.

Works, P. J., and Craig, J., concurred.