LILLIE, J.
 

 Plaintiff, Indiana Plumbing Supply Company, sued Bank of America for $6,060, alleging that for a valuable consideration three checks drawn on two other banks for $3,300, $1,380 and $1,380, respectively, to the order of plaintiff and J & J Plumbing, were delivered by the drawers to Joe Pinedo (J & J Plumbing) and presented by him to defendant Bank of America which paid the proceeds thereof to Pinedo upon the forged endorsements of plaintiff; and that defendant Bank of America collected the amounts of said checks from drawee banks and refused to pay the same to plaintiff. Thereafter defendant bank filed its answer denying on information and belief all allegations of the complaint. On July 12, 1966, plaintiff filed notice of motion for summary judgment attaching thereto declaration of Leon Kasoff, president of plaintiff Indiana Plumbing Supply Company, to which he attached photostatic copies of front and reverse sides of the three checks in question. Defendant Bank of America filed no opposing declaration. On July 26, 1966, motion for summary judgment was granted; judgment was entered accordingly.
 

 Thereafter defendant bank filed notice of motion to vacate judgment and for rehearing on plaintiff’s motion for summary judgment; it filed no declaration either in support of its motion to vacate or in opposition to plaintiff’s motion for summary judgment. Opposing defendant’s motion plaintiff filed declaration of Louis R. Hersh, its attorney, who alleged, among other things, that Mr. Williams, attorney for defendant Bank of America, told him on July 22, 1966, that he knew of no defense that the bank had and did not intend to file a counter affidavit, and, in fact, filed none. Supplemental declaration of Kasoff was filed in support of motion for summary
 
 *909
 
 judgment. On August 11, 1966, the trial judge in effect granted defendant’s motion to vacate by hearing argument on the merits of plaintiff’s motion, determined that there is no triable issue and granted motion for summary judgment. Judgment for plaintiff was entered August 19, 1966, from which defendant Bank of America appeals.
 

 “A summary judgment is proper only if (1) the affidavits in support of the moving party are sufficient, strictly construed, to sustain a judgment in his favor and (2) the affidavits filed by the opponent, liberally construed, do not show facts deemed by the judge hearing the motion sufficient to present a triable issue. (Code Civ. Proc., § 437c;
 
 Stationers Corp.
 
 v.
 
 Dun & Bradstreet, Inc.,
 
 62 Cal.2d 412, 417-418 [1-7] [42 Cal.Rptr. 449, 398 P.2d 785].)
 

 “As pointed out in
 
 Stationers Corp.
 
 v.
 
 Dun & Bradstreet, Inc., supra,
 
 62 Cal.2d 412, 417 [3], ‘The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial.' ”
 
 (Towne Dev. Co.
 
 v.
 
 Lee,
 
 63 Cal.2d 147, 148 [45 Cal.Rptr. 316, 403 P.2d 724] ; see also,
 
 Wilson
 
 v.
 
 Bittick,
 
 63 Cal.2d 30, 34-35 [45 Cal.Rptr. 31, 403 P.2d 159].)
 

 While it is true, as urged by respondent, that on a motion for summary judgment the trial court must determine if defendant has presented any facts by counterdeelaration which give rise to a triable issue or defense and defendant herein chose to put none of the facts set up in the supporting declarations in issue, summary judgment for plaintiff cannot be ordered, even though declaration for defendant bank be absent, unless the supporting declarations comply with section 437c, Code of Civil Procedure, and cover all elements necessary to sustain a judgment in plaintiff’s favor.
 
 (Family Service Agency of Santa Barbara
 
 v.
 
 Ames,
 
 166 Cal.App.2d 344, 351 [333 P.2d 142].) Thus, our inquiry is to the sufficiency of the supporting declarations.
 

 The exhibits (photostatic copies of front and reverse sides of the three checks in question) attached to Kasoff’s original declaration establish without question that the cheeks, drawn on two different banks (First State Bank and United California Bank) made to the order of “ J & J Plumbing Co. and Indiana Pipe (plaintiff herein) ” as joint payees, bear the endorsement of J & J Plumbing and the purported endorsement of plaintiff and Kasoff; that they were presented
 
 *910
 
 by J & J Plumbing to defendant Bank of America; and that on the endorsements defendant Bank of America paid out the proceeds of said checks to J & J Plumbing, thereafter collecting the money from drawee banks. Kasoff’s declarations show that he is president of plaintiff, and affirmatively state “That if sworn as a witness [he] could competently testify” to the facts thereinafter alleged. They demonstrate that declarant of his own knowledge could testify, as alleged, that the endorsements of plaintiff and Kasoff on the reverse of each check are forged, not genuine and not made by him or anyone else with his or plaintiff’s authorization or consent; that no person or firm or Joe Pinedo (J & J Plumbing) had authority to endorse the name of plaintiff or Kasoff; that defendant Bank of America paid out the proceeds of all three checks to J & J Plumbing on endorsements effected by J & J Plumbing by endorsing its name and forging the name of plaintiff, the joint payee; that
 
 all
 
 of the money represented by the three checks was due and owing plaintiff by J & J Plumbing as the result of plumbing materials and supplies furnished by plaintiff to and purchased by Joe Pinedo, owner of J & J Plumbing; and that plaintiff has received none of the money represented by the three checks from any source.
 

 There is no merit to appellant’s attack on the sufficiency of the supporting declarations. Moreover, none of the facts set out therein has been controverted or put in issue by defendant bank, and at neither hearing before the trial court did defendant Bank of America present any kind of defense; in fact, through its counsel defendant bank advised plaintiff’s counsel that it entended to file no counterdeclaration because it knew of no defense. Further, defense counsel told the trial judge that he did not wish to file a response, which prompted the judge to remark, 11 If the defendant has any other facts, it has deliberately chosen not to produce them.” Thus, the undisputed facts are that defendant Bank of America collected from drawee banks (First State Bank and United California Bank) on three checks received by it from one joint payee, J & J Plumbing, to which the same were delivered by the makers, upon which it paid out the proceeds to J & J Plumbing on endorsements effected by J & J Plumbing endorsing its own name and forging the endorsements of plaintiff, the other joint payee. The question then is one of law—is a collecting bank which has paid a cheek made payable to joint payees bearing an endorsement effected by one joint payee signing
 
 *911
 
 his own name and forging that of his joint payee liable to the joint payee whose endorsement was forged.
 

 Authorities support recovery by a payee against a collecting bank where a single payee’s endorsement has been forged—on the theory of conversion or quasi contractual liability. ‘ ‘ It has long been the rule in this state that a collecting bank, which has collected from the drawee on a check upon which the payee’s endorsement was forged, is liable to the payee.
 
 (George
 
 v.
 
 Security Trust & Savings Bank,
 
 91 Cal.App. 708 [267 P. 560];
 
 Walsh
 
 v.
 
 American Trust Co.,
 
 7 Cal.App.2d 654 [47 P.2d 323];
 
 Jones
 
 v.
 
 Bank of America, supra,
 
 49 Cal.App.2d 115, 121-122 [121 P.2d 94].) The same rule has been adopted in a majority of the states of the Union. (See Notes 31 A.L.R 1068; 67 A.L.R. 1535.) ’ ’
 
 (Morgan
 
 v.
 
 Morgan,
 
 220 Cal.App.2d 665, 677 [34 Cal.Rptr. 82].)
 

 This court in a recent decision has extended the above rule to a joint payee in a case almost identical on its facts to the instant one.
 
 (Harry H. White Lumber Co.
 
 v.
 
 Crocker-Citizens Nat. Bank,
 
 253 Cal.App.2d 368 [61 Cal.Rptr. 381].) The appeal was by plaintiff from a judgment of dismissal entered on order sustaining defendant’s demurrer. The following was alleged in the first amended complaint. Plaintiff, a lumber materialman, sold lumber products to Timberline, a roofing company, for use on a construction project owned and constructed by Air-Tare. To insure that the subcontractor Timberline would pay plaintiff for the materials furnished by plaintiff to Timberline, Air-Tare drew four checks on the First West Bank and Trust Company, each made payable to the order of Timberline and plaintiff, and delivered said checks to the joint payee Timberline. Timberline endorsed its name and then forged plaintiff’s endorsement on each cheek and presented them to and received payment thereon from defendant Croeker-Citizens National Bank, the collecting bank. In the instant case the checks were dated July 14 and August 20, 1965, and made payable to both payees (plaintiff
 
 and
 
 J & J Plumbing)
 
 •
 
 in
 
 White Lumber Co.
 
 one of the checks was issued after January 1, 1965, when the Uniform Commercial Code became effective, and all were made payable to both payees (plaintiff
 
 and
 
 Timberline). The court examined the provisions of the Uniform Commercial Code and concluded that no change is indicated in the pre-existing California case law permitting a payee to recover from a collecting bank which has paid out on a forged endorsement, and held that a
 
 *912
 
 joint payee of a cheek has a canse of action against a collecting bank which has paid a check made payable to joint payees bearing an endorsement effected by one joint payee signing his own name and forging that of his joint payee. Specifically as to the check issued after January 1, 1965, the court said: “ ‘Thus, the plaintiff has a cause of action against the defendant collecting bank on the cheek governed by the provisions of the Uniform Commercial Code. ’ ” (P. 376.)
 

 Based upon a portion of Kasoff’s declaration wherein he asserts that he did not know that the checks had been endorsed and negotiated until after plaintiff had sent out mechanic’s lien notices relative to the jobs for which the materials were supplied and the drawers delivered to him copies of the original cheeks indicating that plaintiff had been paid (at which time he advised the drawers that plaintiff’s endorsements had been forged), appellant argues that the motion for summary judgment should have been denied under
 
 Jones
 
 v.
 
 Bank of America,
 
 49 Cal.App.2d 115 [121 P.2d 94], because there had been no delivery of the checks to plaintiff. The
 
 Jones
 
 ease is not similar to the instant one for in
 
 Jones
 
 the action was against the drawee bank, not the collecting bank, and the cheeks never left the custody, possession and control of the makers, while here, delivery was made to the joint payee, J & J Plumbing. In
 
 J ones
 
 v.
 
 Bank of America,
 
 49 Cal.App.2d 115 [121 P.2d 94], certain brokers drew checks payable to the order of their customers and sent them to the manager of their branch office for delivery; the manager stole the checks and forged the endorsements of the payees. The court therein distinguished the ease from
 
 George
 
 v.
 
 Security Trust & Savings Bank,
 
 91 Cal.App. 708 [267 P. 560], in that in
 
 George,
 
 as here, delivery of the checks was effected, and the action was against the collecting bank. Said the court in
 
 Jones
 
 v.
 
 Bank of America,
 
 49 Cal.App.2d 115, at pages 121-122 [121 P.2d 94] : “True, the court in the
 
 George
 
 case stated that the maker of the check did not deliver it to the payee thereof, but to Allen, ‘who had no authority to receive or indorse the same. ’ However, in that case there had been a delivery of the cheek by the drawer, presumptively made, as is stated in section 3097 of the Civil Code, ‘for the purpose of giving effect thereto. ’ Where there has been such a release or delivery of the cheek by the maker, we can readily understand how equitably and legally the defrauded payee might elect to sue the bank, thereby ratifying the receipt of the check by the bank
 
 *913
 
 from the forger. This for the reason that after delivery of the check has been made with the intent and purpose of giving effect thereto and it falls into the hands of an unauthorized person, the rightful payee may charge the bank with having received it as an agent for the use and benefit of the payee and as having dealt with the check as the property of the true payee and therefore bound to pay the proceeds only to him or his order. In other words, under such circumstances the collecting bank holds the funds obtained upon the check for and on behalf of the true owner thereof, and the bank’s payment of such funds to the party who committed the forgery or to any person other than the true owner does not discharge its obligation. But in the case with which we are here concerned the checks never left the custody, possession or control of the makers. The brokers’ manager, Davies, was their agent and employee. He stole the checks while they were yet within the custody and control of the employers. He was neither ostensibly nor in fact the agent of the payees.” Further, at page 125: “The case of
 
 George
 
 v.
 
 Security etc. Bank, supra,
 
 relied upon by respondent, is not controlling here, for the reason that the action there was against a collecting bank, and not, as here, a drawee bank. ’ ’
 

 It is readily apparent from the declarations and exhibits attached thereto that there had been a delivery of all checks by the drawers to the joint payee, J & J Plumbing. The exhibits show that J & J Plumbing presented all three cheeks for payment to defendant bank to which it paid the proceeds on the forged endorsements of plaintiff, the other joint payee. In each instance the check was released from the possession and control of the drawer who effected delivery to the joint payee, J & J Plumbing, which is sufficient delivery to bring the case against the collecting bank within the ambit of
 
 George
 
 v.
 
 Security Trust & Savings Bank,
 
 91 Cal.App. 708 [267 P. 560], and
 
 Morgan
 
 v.
 
 Morgan,
 
 220 Cal.App.2d 665 [34 Cal.Rptr. 82]. In
 
 Harry H. White Lumber Co.
 
 v.
 
 Crocker-Citizens Nat. Bank,
 
 253 Cal.App.2d 368 [61 Cal.Rptr. 381], as here, the drawer “ 1 delivered said checks to the joint payee Timberline Roofing Company. Timberline indorsed its name and then forged plaintiff’s indorsement on each of those checks, presented them to and received payment thereon from defendant Crocker-Citizens National Bank, a collecting bank.’ ” (P. 371.) No issue of delivery was raised therein, but implicit in the court’s decision is the ruling that delivery of the checks
 
 *914
 
 to one joint payee (Timberline) was sufficient to permit the other joint payee (White Lumber Co.) to bring its action against the collecting bank.
 

 Appellant’s final contention that there exists a triable issue—what interest, if any, did plaintiff have in each of said checks—, there has been a nonjoinder of an indispensable party, J & J Plumbing, “and plaintiff’s interest cannot be determined without the necessity [of] determining the interest of said joint payee,” is without merit. The interest of J & J Plumbing has never been an issue, nor could it be for it is undisputed that the entire amount of all three checks was due and owing to plaintiff from J & J Plumbing for materials furnished by plaintiff to it; that J & J Plumbing had no interest whatever in the proceeds of any of the cheeks; and that plaintiff has received none of the proceeds of these checks from any source. Thus, in the trial court’s determination of this action on plaintiff’s motion for summary judgment, the presence of J & J Plumbing was not even material for the judge had a right to and did accept the uncontradicted fact that J & J Plumbing (insolvent, now in bankruptcy and no longer conducting business operations) had no interest of any kind in the proceeds of the three checks. In the light of the record before us, it is our view that the indispensable party doctrine has no application, for the necessity for a joinder of J & J Plumbing simply did not exist. “The general rule is that the court will not order a new party defendant brought in unless the presence of the new party is necessary to the determination of the action.
 
 (East Riverside etc. Dist.
 
 v.
 
 Holcomb,
 
 126 Cal. 315, 320 [58 P. 817];
 
 Ambassador Petroleum Co.
 
 v.
 
 Superior Court,
 
 208 Cal. 667, 673 [284 P. 445].)”
 
 (Baines
 
 v.
 
 Zuieback,
 
 84 Cal.App.2d 483, 492 [191 P.2d 67].) Referring again to
 
 Harry H. White Lumber Co.
 
 v.
 
 Crocker-Citizens Nat. Bank,
 
 253 Cal.App.2d 368 [61 Cal.Rptr. 381], while the joint payee, Timberline, who received the proceeds of the four checks from defendant bank was also named as a defendant, the cheeks totaled some $6,000 out of which plaintiff claimed only $2,472, representing the unpaid balance due it for lumber products sold to Timberline. Thus, the interest of each joint payee in the four checks may, under the pleadings in
 
 White Lumber Co.,
 
 become a factual question for determination by the trier; here such an issue did not exist under the uncontradicted facts set up in Kasoff’s declarations,
 

 
 *915
 
 The judgment is affirmed.
 

 Wood, P. J., and Fourt, J., concurred.
 

 A
 
 petition for a rehearing was denied December 11, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 11, 1968.