[Civ. No. 14708. First Dist., Div. One. June 5, 1951.]

JOSE PAGAN, Appellant, v. BRADY SPENCER et al., Respondents.

Andrew P. Costelli for Appellant.

Henry W. Mahan for Respondents.

BRAY, J.—Plaintiff sued defendants to quiet title to certain real property. Defendants cross-complained to quiet their title thereto. Judgment went for defendants quieting their title. Plaintiff appeals.

## QUESTION PRESENTED

The absconding escrow holder was the agent of which party in the sale and purchase of the property?

## FACTS

The parties stipulated to practically all the facts. Originally plaintiff had purchased a certain lot in Richmond from a tax title buyer. Defendants orally agreed to purchase the lot from plaintiff, who directed defendants to go to the office of a real estate broker named Bowe to have the written contract drawn. Plaintiff knew Bowe. Defendants did not. Bowe had no connection with the sale of the property. He was to draw the contract and to hold the payments as they came in. Bowe drew the contract which was signed by the parties. It provided that plaintiff sold and defendants purchased the lot for $1,500, $700 cash, and the balance of $800 with interest to be paid to plaintiff's wife at the rate of $50 per month. "Said payments are to be made to G. M. Bowe for Mrs. Santos S. Pagan" at Bowe's office. Defendants paid plaintiff the $700 on execution of the contract. As the title was only a tax title it was orally agreed that Bowe was to hold the $800 as paid until plaintiff obtained a decree quieting his title to the property. He was then to turn the money over to plaintiff's wife. It was stipulated that defendant Brady Spencer, if called, would testify that plaintiff told him that when defendants had made payment in full Bowe would deliver them the deed, and that plaintiff, if called, would deny making that statement. Defendants paid in accordance with the terms of the contract.

After the $800 had been paid by defendants to Bowe, but before the quiet title decree had been obtained, plaintiff, needing some cash for a trip to Mexico, asked Bowe to pay him $300 of the moneys in Bowe's hands. Bowe told him that he could not pay any money until the decree was obtained, but that if defendants would authorize him to pay plaintiff the money, he would do so. Defendants gave such authorization

and Bowe paid plaintiff $300. Later, and before the decree was obtained, Bowe absconded with the $500 balance and has not been heard from since. It is agreed that both parties are innocent so far as the loss of the money is concerned. No question of negligence of either party is raised.

## WHOSE AGENT WAS BOWE?

Plaintiff contends that Bowe was the agent of both parties, and as the contingency upon which plaintiff was to receive the balance had not occurred, namely, the obtaining of the quiet title decree, the title to the $500 was still in defendants and the loss falls on them. The court found that Bowe was the agent of plaintiff and that the title to the balance of the purchase price was in plaintiff at all times and ordered the title of defendants in the real property quieted.

▋ It is well settled in California that "If the property in the custody of the escrow-holder is either embezzled or lost by it, then, as between the seller and the buyer, the loss falls on the one who owns the property at the time of its embezzlement or loss. For example, if the escrow-holder embezzles the purchase price before the time when, under the terms of the escrow, the seller is entitled to it, the loss falls on the buyer since it is still his money. On the other hand, if the money be embezzled after the time when the seller has become entitled to the money, the loss falls on him since it is now considered his property." (*Crum* v. *City of Los Angeles,* 110 Cal.App. 508, 514 [294 P. 430].)

▋ In *Shreeves* v. *Pearson,* 194 Cal. 699 [230 P. 448], the court said (p. 707) : ". . . whenever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow holder is as to such deed and money the agent of both parties until such time as the said satisfactory certificate of title is produced, but he thereupon becomes the agent of the purchaser as to such deed and of the seller as to such money." (See, also, *Hildebrand* v. *Beck,* 196 Cal. 141 [236 P. 301, 39 A.L.R. 1076].)

We find it impossible to distinguish the facts in this case from those in the Crum case, *supra.* There the buyer sent a check for the balance of the purchase price to the bank selected ·by the seller, and with whom the seller had left the deed, with instructions to hold it until further instructions.

The bank cashed the check and became insolvent. The court held, in effect, that as the seller under the agreement was not entitled to receive the purchase price until it had furnished the buyer with a certificate of title, the bank, when it cashed the check, was holding the proceeds in its capacity as agent for the buyer. The Crum case likewise answers the contention of defendants here that the fact that plaintiff selected Bowe is controlling. There the court held that regardless of whether there was a true escrow the principles of escrow quoted above applied. Nor can we distinguish our case from the principle of the Shreeves case, *supra,* where a deed was placed in escrow by the seller to be delivered upon receipt of certain moneys and trust deed, and the moneys were placed there to be paid the seller when a title guarantee could be given the buyer, and other things done. The court there held (p. 711) : ''We are compelled to the conclusion that there still remained unperformed a number of substantial requirements of this escrow at the time of Eshleman's defalcation, and hence that up to and at and after said time he still occupied his original position as the agent of the purchasers in respect to whatever portions of the purchase price of said property either were or were to come into his hands before the completion of said escrow.''

The Hildebrand case, *supra,* is likewise in point. There the escrow holder absconded with the purchase moneys which had been deposited by the buyer with instructions to pay it to the seller when a title guarantee could be obtained for the buyer. The court found that the embezzlement occurred before this condition could be met; the title to the money had not passed, and therefore it was the money of the buyer which was embezzled. As said in *First Nat. Bank* v. *Caldwell,* 84 Cal.App. 438, 446 [258 P. 411] : ''Whenever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow-holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow-holder is, as to the said deed and money, the agent of both parties until such time as the said satisfactory certificate is produced and he thereupon becomes the agent of the purchaser as to such deed and of the seller as to such money.''

The test to be applied in a situation of this kind is: in whom was the title to the money at the time of the embezzlement? This, again, depends in some degree upon the question of whether title to the property had passed to the buyer. Obvi-

ously it had not here. The conveyance to the buyer was not to occur until the quiet title decree had been obtained. Plaintiff's wife was not entitled to the money until then. The court found that Bowe held a deed from plaintiff to defendants. Defendant Brady Spencer's testimony would have been that he was to get the deed from Bowe. It was not deliverable until the agreed condition occurred, namely, a quiet title decree was obtained. While defendants could have waived this requirement, they did not do so. Another test is this: Could plaintiff have required Bowe to pay him or his wife the $500 before a quiet title decree was obtained? Obviously he could not, for the reason that title had not yet been delivered. Thus, at the time of the embezzlement, title to the property was in plaintiff and title to the money in defendants.

Defendants do not quarrel with the rule of law of the above cases. They merely disregard it, and contend that Bowe was plaintiff's agent alone. Thus, they quote section 2317 of the Civil Code on ostensible authority, and cite *Walsh* v. *American Trust Co.*, 7 Cal.App.2d 654 [47 P.2d 323], a case involving a forged check by an ostensible agent; *Safeway Stores, Inc.* v. *King Lumber Co.*, 45 Cal.App.2d 17 [113 P.2d 483], a case involving the endorsing and cashing of checks by an agent who had apparent authority to do so; *Siskin* v. *Dembroff*, 121 Cal.App. 730 [9 P.2d 908], involving extent of an agency; and *Gorton* v. *Doty*, 57 Idaho 792 [69 P.2d 136], involving the question of agency in use of an auto; and the rule in 2 Corpus Juris Secundum, page 1063, to the effect that one who knows that another is acting as his agent or permits him to appear as such, to the injury of third persons who have dealt with the apparent agent in good faith, is estopped to deny the agency. Obviously none of these apply to the case at bar.

Nor is *Tosi* v. *Northern Calif. Bldg. etc. Assn.*, 3 Cal.2d 274 [44 P.2d 333], also cited by defendants, any help. There the question was whether the real estate broker who claimed to be acting for defendant was its agent. The broker received payments periodically from plaintiff and turned some of them over to the defendant, finally absconding with the balance. There was no escrow involved. The court held that although not defendant's agent in the beginning, the course of conduct between him and defendant was such that he became its agent; also that defendant ratified his acts as such agent.

"Whether an agency has been created is to be determined

by the relation of the parties as they in fact exist under their agreements or acts." (*Rezos* v. *Zahm & Nagel Co.,* 78 Cal. App. 728, 730 [246 P. 564].) While not conclusive on the subject, the interpretation placed by Bowe upon his relationship to defendants is interesting. Replying to a letter written him by plaintiff's attorney, Bowe, on June 11, 1946, and before defendants had paid in full, wrote: "I am the Escrow holder *for the purchasers. . . .* I have been instructed by them not to release any money to Mr. Pagan until this property shows clear." (Emphasis added.) The fact that payments were to be made to Bowe for Mrs. Pagan does not change the situation any. She would not be entitled to the money until the specified contingency had arisen, namely, the quiet title decree obtained. The mere selection of the escrow holder by plaintiff does not bring the case within the rule of *Safeway Stores, Inc.* v. *King Lumber Co., supra* (45 Cal.App.2d 17), that where one of two innocent persons must suffer, the loss should be borne by him whose acts made the loss possible. The fact that plaintiff brought defendants to Bowe makes no stronger situation than the one in the Crum case, *supra,* where the seller was the one who selected the bank as the one to whom the buyers were to make payment. The trial court made no finding as to whether title to the property had passed at the time Bowe absconded, although erroneously it did find that title to the money had passed. Under the circumstances of the case one could not have occurred without the other, and as pointed out before, title to the property could not pass until the quiet title decree was obtained, which was after Bowe absconded. "The title to money deposited in escrow to be paid to the vendor of property does not pass until all conditions of the escrow have been fulfilled." (*Hastings* v. *Bank of America,* 79 Cal.App.2d 627, 629 [180 P.2d 358].)

The judgment and decree quieting title is reversed with instructions to the trial court to give the defendants 30 days after the decision herein becomes final in which to pay plaintiff the sum of $500 without interest, and in addition thereto, if defendants have been in possession of said premises, all taxes levied, assessed and accrued against said premises from the date that defendants took possession up to and including the time that said defendants shall pay plaintiff said sum of $500; and in the event said plaintiff has paid any taxes during said period of time said defendants shall pay to said plaintiff all taxes so paid by him during said period of time, and the same shall be a lien on said property in favor of plaintiff. Upon

failure of defendant to pay said sum and said taxes within said period, title thereto shall be quieted in plaintiff.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for rehearing was denied June 27, 1951, and the opinion and judgment were modified to read as above printed.